ROBERT F. SUMMEY, JR., PLAINTIFF v. HAZEL ALEXANDER CAUTHEN, JR., DEFENDANT

— AND —

PLYWOOD SALES COMPANY, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF

— AND —

VICTOR CARROLL CAUTHEN, THIRD-PARTY DEFENDANT

No. 78

(Filed 12 July 1973)

1. **Automobiles § 51— striking turning vehicle — sufficiency of evidence of negligence**

In an action by an automobile passenger to recover for injuries sustained in a collision between the automobile and a truck, the evidence was sufficient to be submitted to the jury on the issue of negligence by the automobile driver where it tended to show that the accident occurred while the truck was attempting to make a left turn across the automobile's lane of travel on a four-lane highway, the automobile driver was familiar with the road at the scene of the collision, the speed limit was 45 mph, the automobile driver rounded a blind curve prior to the point of collision in excess of 60 mph, upon rounding the curve he could have seen the truck giving a left turn signal and slowly moving across the center line 300 feet in front of him, and when he applied his brakes his tires smoked and left heavy skid marks on the surface of the road 93 feet before the impact.

2. **Rules of Civil Procedure § 50— judgment n.o.v. — consideration of evidence**

In passing on a motion for judgment n.o.v., the court must view the evidence in the light most favorable to the non-movant.

3. **Rules of Civil Procedure § 50— error in allowing motion for judgment n.o.v.**

The motion for judgment n.o.v. is that judgment be entered in accordance with the movant's earlier motion for a directed verdict; consequently, where the trial court properly denied defendants' motion for directed verdict, it was error for the court thereafter to allow defendants' motion for judgment n.o.v.

4. **Trial § 42— finding of contributory negligence — award of damages — surplusage**

Where the jury found that plaintiff was injured and damaged by the negligence of defendant's agent and that the agent by his own negligence contributed to his own injuries, neither defendant nor his agent is entitled to recover damages from the codefendant, and an-

swers of the jury awarding such damages are surplusage and must be stricken and disregarded in rendering judgment.

APPEAL by defendant Plywood Sales Company, Inc., from *McLean, J.*, at the 11 September 1972 Session of GASTON, heard prior to determination by the Court of Appeals.

On 16 September 1969, Robert F. Summey, Jr., while riding as a passenger in a family purpose automobile, owned by Hazel Alexander Cauthen, Jr., and driven with his permission by his son Victor Cauthen, was severely injured in a collision between the Cauthen automobile and a truck owned by Plywood Sales Company, Inc., hereinafter called Plywood, and driven by its employee, Bobby Earl Roberson, then acting in the course of his employment. The collision occurred at approximately 9:45 a.m. on New Hope Road, a four lane, paved road in Gastonia. The weather was fair and the road was dry.

At the point of collision New Hope Road had four lanes of traffic, two northbound and two southbound. It was not a divided highway. A double yellow line, indicating no passing, ran along the center of the road. To the east a housing project was under construction. At the point of collision an old driveway had been opened up as a new street or road, called Hoffman Road, leading to the housing project. Vehicles moved along it to and from New Hope Road from time to time, though the record does not indicate that it had been opened for general use. To the south of the point of collision New Hope Road rounded a blind curve.

Plywood's truck, heavily loaded with plywood for delivery at the housing project, approached the point of collision from the north in the inside lane for southbound traffic. The driver, Roberson, stopped abreast of Hoffman Road, intending to make a left turn into that road for the delivery of his cargo. After coming to a full stop, Roberson set the truck again in motion toward Hoffman Road. The Cauthen vehicle, headed north, rounded the curve. At the point of collision the Cauthen vehicle was in the outside or easternmost lane for northbound traffic. The front of the truck struck the Cauthen vehicle in its left side from about the front wheel to the driver's door. Both the plaintiff and Victor Cauthen sustained severe personal injuries.

Robert F. Summey, Jr., brought suit for damages against Hazel Alexander Cauthen, Jr., and Plywood, alleging that their respective agents were negligent, in specified particulars, in the

operation of their respective vehicles and that the negligence of each was a concurring proximate cause of the collision and of his injuries. Plywood and Hazel Alexander Cauthen, Jr., filed answers, each denying the negligence by its or his driver and alleging that the sole proximate cause of the collision was the negligence of the driver of the other vehicle, as alleged in the complaint. Each of these defendants filed a cross-claim against the other for contribution and a further cross-claim for damages to its or his own vehicle. Plywood also made Victor Cauthen a third party defendant and filed its complaint against him for contribution in the event that Plywood should be found liable in damages to Robert F. Summey, Jr. Victor Cauthen filed answer to such third party complaint, denying his negligence and his liability to Plywood for contribution, and asserting a cross-claim against Plywood for damages for his own injuries in the collision. Plywood and Hazel Alexander Cauthen, Jr., filed replies to the various cross-claims against them.

At the close of all the evidence Plywood, Hazel Alexander Cauthen, Jr., and Victor Cauthen each moved for a directed verdict in its or his favor on the action of the plaintiff and on the respective cross-claims against it or him. These motions were all denied, except that the motion of each of the Cauthens to dismiss the cross-claim of Plywood for the recovery of its damage was allowed.

The following issues were submitted to the jury and answered as indicated:

1. Was the plaintiff injured and damaged by the negligence of the agent of the defendant Plywood Company, Inc., as alleged in the complaint?

ANSWER: Yes.

2. Was the plaintiff injured and damaged by the negligence of the agent of Hazel Alexander Cauthen, Jr., as alleged in the complaint?

ANSWER: Yes.

3. What damages, if any, is the plaintiff entitled to recover?

ANSWER: $30,000.00.

Summey v. Cauthen

4. Was the defendant Victor Cauthen injured and damaged by the negligence of the defendant Plywood Sales Company, Inc., as alleged in the Cross-action?

ANSWER: Yes.

5. Did the defendant, Victor Cauthen, by his own negligence contribute to his injuries and damages as alleged in the Answer of Plywood Sales Company, Inc.?

ANSWER: Yes.

6. What damages, if any, is the defendant, Victor Cauthen, entitled to recover of and from the Plywood Sales Company, Inc.?

ANSWER: $15,000.00.

7. What damages, if any, is the defendant, Hazel Alexander Cauthen, Jr., entitled to recover (a) for his property damages; and (b) for the medical expenses of his son, Victor Cauthen?

ANSWER: (a) $2,650.00.

(b) $2,800.00.

Following the return of the verdict, Hazel Alexander Cauthen, Jr., and Victor Cauthen each moved to have the verdict and any judgment entered thereon against such moving party set aside and for judgment in favor of such moving party notwithstanding the verdict pursuant to Rule 50(b)(1). Plywood then moved that the court treat as surplusage the answers of the jury to Issues 6 and 7 and for the entry of a judgment in favor of the plaintiff against the defendants in accordance with the jury's answers to the first three issues and dismissing all cross-claims and counterclaims by the defendants against each other for the recovery of their own damages.

The Superior Court entered judgment as follows: (1) It allowed the motions of Hazel Alexander Cauthen, Jr., and Victor Cauthen to set aside the verdict as to Issues 2 and 5; (2) it allowed the motion of Hazel Alexander Cauthen, Jr., and the motion of Victor Cauthen for a judgment notwithstanding the verdict on those two issues; (3) it gave judgment for the plaintiff against Plywood in the amount of $30,000; (4) it gave judgment in favor of both Hazel Alexander Cauthen, Jr., and

Victor Cauthen with respect to the claim of the plaintiff; (5) it gave judgment in favor of Victor Cauthen against Plywood in the amount of $15,000; (6) it gave judgment in favor of Hazel Alexander Cauthen, Jr., against Plywood in the amount of $5,450; (7) in the event that such judgments notwithstanding the verdict are vacated on appeal, it allowed a new trial to the defendant Hazel Alexander Cauthen, Jr., and to Victor Cauthen as to Issues 2 and 5; and (8) it adjudged that Plywood pay the costs of the action.

All of the foregoing matters are undisputed. The following is a summary of the evidence as to the matters in dispute:

The plaintiff, Robert F. Summey, Jr., testified that he does not recall seeing the truck or any of the circumstances of the collision. The speed limit on New Hope Road, at the point of collision and as one approached it from the south, was 45 miles per hour. The Cauthen car was in the outside lane for northbound traffic. Victor Cauthen did not operate the automobile in any way such as to cause Summey to ask him to slow down or to stop.

Sergeant Abernethy of the Gastonia City Police, a witness for the plaintiff, testified that a motorist stopped in the intersection of New Hope Road and Hoffman Road, looking south, would be able to see a northbound vehicle at a distance of approximately 150 feet. He observed debris on the road approximately at the front end of the truck and six feet south of the Cauthen automobile. Skidmarks in the northbound traffic lane extended southward from the debris 93 feet.

Bobby Earl Roberson, driver of Plywood's truck but a witness called by the plaintiff, testified that he was delivering a load of plywood to the housing development and had made similar trips several times previously. Consequently, he was familiar with New Hope Road at the point of collision. Hoffman Road was the proper place for him to turn in to deliver his cargo. Traffic went in and out upon it frequently. The truck had a great deal of pulling power, having dual wheels in the back and two axles. Its cab was over the wheels and, as he sat in it, he was some seven feet above the road. When he arrived at the intersection of New Hope Road and Hoffman Road, he brought his truck to a complete stop and shifted into first (low) gear. The truck had air brakes which were in good condition. He looked to the south. Seeing a pickup truck coming, he waited until it went by. At that time, no part of the wheels were

across the double yellow line. After the pickup truck passed, he again looked south on New Hope Road and saw nothing coming. He proceeded slowly, in first gear, to move out to cross the northbound lanes. The highest speed he attained prior to the collision was about three miles per hour. He saw the Cauthen automobile when it came around the curve about 300 feet away and tried to stop. The heavily loaded truck, then almost across the inner northbound lane, just kept pushing forward. It went about four feet into the outside lane for northbound traffic, having moved about 14 feet from its stopped position. At the impact, the truck stopped and the motor cut off. The truck was moving forward when he first saw the Cauthen automobile approximately 300 feet away. The Cauthen automobile was traveling in excess of 60 miles an hour. Cauthen applied his brakes and Roberson "could see the smoke coming off his tires." As Roberson approached the intersection, he gave a left turn signal with his flashing electric light. When he started across, after having come to a complete stop, he went straight across the highway and when he saw the Cauthen automobile approaching, he cut back to his right to avoid the collision.

Victor Cauthen, a witness for the plaintiff, testified the brakes and tires on the Cauthen car were in good condition. He approached the point of collision in the outermost northbound lane. He approached the curve and the intersection at a speed of 40 to 45 miles per hour. He saw the truck sitting, stopped, in the intersection with the left front of it over the yellow line. He was then traveling at a speed of less than 40 miles per hour. He saw no left turn signal blinker on the truck. Nothing caused him to think the truck would move out in front of him. He had time to "tap his brakes" one or more times before the collision. As he proceeded on in his lane of traffic, the truck came across into that lane and Cauthen then applied his brakes hard. The collision then occurred. He was not exceeding 45 miles per hour. He was about 70 yards (210 feet) from the truck when he first saw it, stopped with a small portion of its left wheel over the yellow line. The Cauthen car traveled about 35 yards (105 feet) before the truck started to move. Cauthen was knocked unconscious by the collision. He had never seen traffic going in or out of Hoffman Road prior to this occasion.

Guy S. Schronce, Jr., a witness for Plywood, testified that he was driving a motor grader south on New Hope Road, overtaking, beside and passing Plywood's truck at the time of the

collision, he being in the outermost of the southbound lanes. The height of the motor grader was such that he was sitting two or three feet higher than the driver of Plywood's truck. The truck stopped in the innermost of the southbound lanes. It was giving a left turn blinker signal. After it stopped, a northbound pickup truck came by. After it passed, Plywood's truck was still stopped. It then began to make the left turn. After the pickup truck passed, Mr. Schronce observed the Cauthen automobile proceeding north on New Hope Road approximately 300 to 350 feet away [he presumably being able to see that distance due to the height of his seat on the motor grader]. There was no other traffic coming north along New Hope Road. He saw the Cauthen automobile coming around the curve after Plywood's truck had started across and had gotten "to about the line in the middle of the two lanes going north." The Cauthen car came around the curve in the middle or innermost north-bound lane and then swerved to the outside lane. The Plywood truck driver applied his brakes and tried to make a right hand turn but moved very little to the right. The driver of the Cauthen car applied his brakes and then there was a collision. It was only about two seconds from the time Mr. Schronce saw the Cauthen car come around the curve until the collision occurred. He watched the Cauthen car long enough to form an opinion as to its speed. In his opinion the Cauthen car was "doing over 50 miles per hour." It slowed down only after the driver applied its brakes, and was going approximately 15 to 20 miles an hour at the time of the impact. At the time of impact Plywood's truck had gone approximately a foot into the outermost of the two northbound lanes. The impact caused the front of the truck to be knocked around to its left about one foot and then the truck stopped. Mr. Schronce could not say whether any part of the left front wheel of Plywood's truck was over the yellow line as it stood stopped waiting for the pickup truck to pass, not then having a view of that wheel. He was right beside the truck when it started its left turn after the pickup truck had passed. He himself was traveling southward at 20 to 25 miles an hour. He stood up in the cab of the grader and looked back to his left to see the accident. When he first saw the Cauthen automobile it was 150 to 200 feet from him and in his opinion was traveling "over 50 miles an hour." Plywood's truck moved a foot or a foot and a half after the collision.

Robert F. Summey, Jr., recalled as a witness in his own behalf, testified that when Mr. Roberson, the driver of Ply-

wood's truck, came over to him as he lay on the ground after the collision, he said, "I'm sorry; I didn't see you coming."

Roberson, when testifying as a witness for the plaintiff, said he did not make such a statement to the plaintiff.

Mr. Schronce testified that he immediately stopped and rendered assistance but did not hear Roberson make such a statement.

*Frank Patton Cooke for plaintiff.*

*Hollowell, Stott & Hollowell and Mullen, Holland & Harrell by Grady B. Stott for Hazel Alexander Cauthen, Jr., and Victor Carroll Cauthen.*

*Carpenter, Golding, Crews & Meekins by James P. Crews for Plywood Sales Company, Inc.*

LAKE, Justice.

There was no error in the denial of the motions of the defendants Cauthen, at the conclusion of all the evidence, for a directed verdict in their favor on Issues 2 and 5. The question raised by such a motion is whether there is evidence sufficient to go to the jury. This is substantially the same question as that formerly presented by a motion for judgment of involuntary nonsuit. *Younts v. Insurance Co.,* 281 N.C. 582, 189 S.E. 2d 137; *Investment Properties v. Allen,* 281 N.C. 174, 188 S.E. 2d 441; *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297; *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396. In passing upon such a motion, the court must consider the evidence in the light most favorable to the non-movant. *Investment Properties v. Allen, supra.* That is, the evidence in favor of the non-movant must be deemed true, all conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of every inference reasonably to be drawn in his favor. *Younts v. Insurance Co., supra; Investment Properties v. Allen, supra; Adler v. Insurance Co.,* 280 N.C. 146, 185 S.E. 2d 144; Phillips' Supplement to McIntosh, North Carolina Practice and Procedure, 2d Ed., § 1488.15 (1) (2).

[1] So viewed, the evidence is sufficient to show that Victor Cauthen, the driver of the automobile, was familiar with the road at the scene of the collision, that though the speed limit was 45 miles per hour he rounded the curve at a speed in ex-

cess of 60 miles per hour, that upon rounding the curve he could have seen the truck giving a signal for a left turn and slowly moving across the center line in the course of such turn 300 feet in front of him, and that when he applied his brakes, his tires smoked and left heavy skid marks on the surface of the road 93 feet before the impact. If true, as for the purpose of this motion must be assumed, this is ample evidence to support the finding by the jury that Victor Cauthen, and so Hazel Alexander Cauthen, Jr., whose agent he was, was negligent, that such negligence was one of the proximate causes of the collision and resulting injury to the plaintiff and that such negligence contributed to the injuries of Victor Cauthen. *Day v. Davis,* 268 N.C. 643, 151 S.E. 2d 556; *Rogers v. Rogers,* 265 N.C. 386, 144 S.E. 2d 48; *Raper v. Byrum,* 265 N.C. 269, 144 S.E. 2d 38; *Bridges v. Jackson,* 255 N.C. 333, 121 S.E. 2d 542; *Lemons v. Vaughn,* 255 N.C. 186, 120 S.E. 2d 527; 1 Strong, N. C. Index 2d, Automobiles, § 58. Thus, there was ample evidence to require the submission to the jury of Issues 2 and 5.

[2, 3] "The propriety of granting a motion for judgment notwithstanding the verdict is determined by the same considerations as that of a motion for a directed verdict." Sizemore, General Scope and Philosophy of the New Rules, 5 Wake Forest Law Review 1; Phillips' Supplement to McIntosh, North Carolina Practice and Procedure, 2d Ed., § 1488.35. Thus, in passing on a motion for judgment n.o.v., the court must view the evidence in the light most favorable to the non-movant. *Investment Properties v. Allen, supra.* The motion for judgment n.o.v. is that judgment be entered in accordance with the movant's earlier motion for a directed verdict, notwithstanding the contrary verdict actually returned by the jury. Rule 50(b), Rules of Civil Procedure, G.S. Chapter 1A. Consequently, the court below erred in entering judgment for Hazel Alexander Cauthen, Jr., and Victor Cauthen in disregard of the jury's verdict on Issues 2 and 5.

As permitted by Rule 50(c), the Cauthens coupled with their motion for judgment n.o.v. an alternative motion for a new trial "on the grounds that the evidence is insufficient to justify the jury verdict and the verdict is contrary to law." The Superior Court granted this motion conditionally "as to the second and fifth issues" in the event that its judgment n.o.v. be vacated or reversed on appeal, stating as its ground for so doing "that the evidence is insufficient to justify the verdict

on issues two and five and the verdict is contrary to law." In such a situation, as Dean Phillips has said in his supplement to McIntosh, North Carolina Practice and Procedure, 2d Ed., § 1488.45:

> "This is a final judgment. The Appellate Court may reverse the grant of judgment n.o.v. If it does this and nothing more, the new trial proceeds upon remand. But the Appellate Court may also reverse on the grant of new trial, in which event the judgment of the verdict winner must be reinstated."

As above shown, our review of the record leads us to the conclusion that the trial judge was in error in his view that the evidence is insufficient to justify the verdict of the jury on Issues 2 and 5 and we find no error in the record prejudicial to either Hazel Alexander Cauthen, Jr., or to Victor Cauthen. We, therefore, vacate the order of the Superior Court granting a new trial on these issues.

[4] We are thus brought to the question of the judgment to be entered on the verdict returned by the jury. The jury having found in Issue No. 2 that the plaintiff was injured and damaged by the negligence of the agent of Hazel Alexander Cauthen, Jr., as alleged in the complaint, the agency being admitted, and having found in answer to Issue No. 5 that Victor Cauthen by his own negligence contributed to his own injuries, as alleged in the answer of Plywood, it follows, as a matter of law, that neither of the Cauthens is entitled to recover damages from Plywood, and the answers of the jury to Issues 6 and 7 are surplusage which must be stricken and disregarded in rendering judgment. *Swann v. Bigelow,* 243 N.C. 285, 90 S.E. 2d 396; Strong, N. C. Index 2d, Trial, § 42.

We, therefore, reverse the judgment of the Superior Court and remand this matter to it for the entry of a judgment, in accordance with the verdict of the jury upon Issues 1 through 5, inclusive; that is, that the plaintiff have and recover of the defendants Plywood Sales Company, Inc., and Hazel Alexander Cauthen, Jr., $30,000, and that Hazel Alexander Cauthen, Jr., and Victor Cauthen have and recover nothing of the defendant Plywood Sales Company, Inc., on account of their damages and injuries alleged in their respective cross-complaints.

Reversed.